**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | |
| | * | CASE NO.: 1: 14-cr-00485-GLR |
| WINTERS, VAUGHN VERYL | * | |
| | * | |
| Defendant | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## DEFENDANT'S MOTION FOR A HEARING
## PURSUANT TO FRANKS V. DELAWARE

NOW COMES Defendant, Vaughn Veryl Winters, by and through his attorneys, Craig M. Kadish, Esquire, and Kadish, Forster & Fastovsky, LLC, and moves this Honorable Court to grant him a hearing on the Affidavit of Corporal David Teets, and requests a hearing, and states as follows:

## I.

Defendant is charged with Possession with the Intent to Distribute a Controlled Substance. On or about July 18, 2014, a search and seizure warrant was issued to authorize a search of the residence and outbuilding, located at 113 N. Eighth Street, Oakland, Garrett County, Maryland to search for:

> Controlled Dangerous Substances, Controlled Dangerous Substance Paraphernalia, Records and Monies from Controlled Dangerous Substance transactions, Electronic Recording Equipment, Electronically Recorded Tapes, Computers, Documents, Paperwork and additional evidence related to Controlled Dangerous Substance offenses and the identification of individuals participating *in* and/or committing Controlled Dangerous Substance offenses.

The warrant was based on the affidavit of Corporal David Teets ("Affiant"), of the Garrett County Narcotics Task Force. A copy of the warrant application and affidavit ("Affidavit") are attached as Exhibit 1 and incorporated herein. The warrant was executed on or

about July 23, 2014, during which time various alleged CDS and CDS-related evidence were discovered, which compelled the charges filed in the above-captioned matter.

## II.

Affiant asserted numerous allegations in the Affidavit, to wit, that a warrant is appropriate due to:

1. The information provided by CC 1.
2. The information provided by CC 2.
3. The information provided by two individuals interested in a reduction in penalties in an upcoming court case in Garrett County.
4. The information provided by CC 3.
5. The observations provided by Detective McLaughlin.
6. The observations provided by the Affiant.
7. An email from DFC C.B. Meyers.
8. The information provided by CC 4
9. The information provided by Confidential Informant 94-203.
10. The observations of Corporal Zimmerman.
11. The information provided by CC 5.
12. The information provided by Confidential Informant 94-226.
13. The information provided by Confidential Informant 94-232.
14. The information provided by Confidential Informant 94-230.
15. The information provided by CC 6.
16. The information provided by CC 7.
17. The information provided by Confidential Informant 94-231.
18. The information provided by Justin Dillsworth.
19.  Defendant's criminal history.
20. The training, knowledge and experience of your Affiant.

*See* Exhibit 1.

In delineating the various bases noted *supra,* Affiant fails entirely to provide any indication as to how the Confidential Informants and/or Concerned Citizens providing information learned of the purported activity (i.e. personally observed, previously purchased from Defendant, or merely heard *via* rumor).  Moreover, although Affiant provided the dates of the interviews with the Confidential Informants and Concerned Citizens providing information,

Affiant neglected to provide any indication as to the time frame during which the individuals observed or learned of the purported activity.

The statements in the Affidavit regarding the information from the purported informants as well as the "CDS investigation" and history of Defendant were made with reckless disregard for the truth of the matters therein, which were provided as a basis for the intrusion into Defendant's home. Proper recourse mandates excision of the statements and observations of the officers unlawfully obtained, leaving insufficient specificity and probable cause to support the Affidavit and Warrant.

## III.

**WHEREFORE**, Defendant prays that this Honorable Court grant him a hearing on the Affidavit complained of herein; and that the Court suppress all evidence seized as a result of the search warrant obtained pursuant to the Affidavit.

Respectfully Submitted,


   /s/ Craig M. Kadish          
Craig M. Kadish, Esquire
*Kadish, Forster & Fastovsky, LLC*
401 E. Pratt Street, Suite 2332
Baltimore, Maryland 21202
(410) 8374-0020
***Attorneys for Defendant***

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | * |
| | *     CASE NO.: 1:14-cr-00485-GLR |
| WINTERS, VAUGHN VERYL | * |
| | * |
| Defendant | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR A HEARING
PURSUANT TO FRANKS V. DELAWARE**

**Issues Presented**

**I. Whether the Affidavit Fails to Establish Probable Cause After Exclusion and Excision of Statements, Made in Reckless Disregard for their Truth.**

**Law**

Ordinarily, a defendant seeking to suppress evidence seized pursuant to a search warrant is confined to the "four corners" of the affidavit. In some circumstances, however, a defendant may challenge the truthfulness of statements made by the affiant. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). *See Commonwealth v. Reynolds*, 374 Mass. 142 (1977); *Commonwealth v. Youngworth*, 55 Mass. App. Ct. 30, 37-38 (2002); *Commonwealth v. Alcantara*, 53 Mass. App. Ct. 591, 594 (2002).

To warrant a Franks hearing, a defendant must make a two-part showing. First, the defendant must make a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the warrant affidavit. *Franks*, 438 U.S. at 155-156; *Youngworth*, 55 Mass. App. Ct. at 37-38. A substantial

showing "'lies somewhere between mere denials on the one hand and proof by a preponderance [of the evidence] on the other.'" *Commonwealth v. Ramirez*, 416 Mass. 41, 49-50 (1993), quoting *People v. Lucente*, 506 N.E.2d 1269, 1277 (Ill. 1987). Second, the defendant must show that the challenged material is necessary to a finding of probable cause. *Franks*, 438 U.S. at 155-156; *Alcantara*, 53 Mass. App. Ct. at 594. "Upon meeting both requirements, the defendant is entitled to an evidentiary hearing." *Alcantara*, 53 Mass. App. Ct. at 594.

When challenging the probable cause basis of an arrest warrant, the proper course is for the defendant to request a "taint hearing" pursuant to *Franks v. Delaware*, 438 U.S. 154. *Gibson v. State*, 138 Md. App. 399, 409-10 (2001).

## **Argument**

For purposes of this memorandum, Defendant will rely on the facts set forth in the Affidavit of Corporal David Teets ("Affiant") of the Garret County Narcotics Task Force, to illustrate the background and factual basis that led to Affiant seeking a warrant. *See* Exhibit 1.

Affiant asserted numerous allegations in the Affidavit, to wit, that a warrant is appropriate due to:

1. The information provided by CC 1.
2. The information provided by CC 2.
3. The information provided by two individuals interested in a reduction in penalties in an upcoming court case in Garrett County.
4. The information provided by CC 3.
5. The observations provided by Detective McLaughlin.
6. The observations provided by the Affiant.
7. An email from DFC C.B. Meyers.
8. The information provided by CC 4
9. The information provided by Confidential Informant 94-203.
10. The observations of Corporal Zimmerman.
11. The information provided by CC 5.
12. The information provided by Confidential Informant 94-226.
13. The information provided by Confidential Informant 94-232.
14. The information provided by Confidential Informant 94-230.

15. The information provided by CC 6.
16. The information provided by CC 7.
17. The information provided by Confidential Informant 94-231.
18. The information provided by Justin Dillsworth.
19.  Defendant's criminal history.
20. The training, knowledge and experience of your Affiant.

Each item will be discussed *seriatim*.

### I.   Information from Concerned Citizen No. 1 (CC1)

Regarding information provided by CC 1, Affiant writes:

> "During November 2011, a Concerned Citizen (herein referred to as CC1) contacted the Garrett County Narcotics Task Force and provided information on [Defendant]. CC1 advised that [Defendant] is a major dealer of cocaine and prescription pills. [The Defendant] is also a user as well."

Affiant provided no information pertaining to CC 1, other than identifying him or her as a "concerned citizen."  No information regarding the reliability of CC 1 was included, such as whether he/she has provided valuable or truthful information in the past, or what bias or motivation CC 1 may have had in providing the purported information.  Additionally, the "information" was provided in November 2011, more than two and a half years prior to the July 18, 2014, warrant application.  Consequently, any information provided by CC 1, if believed, was attenuated in the *more than thirty* (30) months that passed between when the information was provided and when the warrant was executed.  Significantly, Affiant failed to include or indicate how CC 1 learned of the purported activity (i.e. personally observed, previously purchased from Defendant, or merely heard *via* rumor).  Lastly, the Affiant failed to provide any indication of when CC 1 learned of the purported activity.  As noted in the Affidavit, *Exhibit 1,* Defendant was convicted between 1984 and 2002 of multiple CDS charges.  Nevertheless, Affiant neglected to indicate the time frame of the purported activity complained of.

*II.*     Information from Concerned Citizen No. 2 (CC2)

Regarding information provided by CC 2, Affiant writes:

> On February 1, 2012, your Affiant spoke to a Concerned Citizen (herein referred to as CC2) on the phone. CC2 advised the following information: [Defendant] is supplying cocaine and prescription pills to the Garrett County area. Aaron Dillsworth, who works for [the Defendant] and whose mother is living with and dating [the Defendant], is obtaining cocaine and prescription pills from [Defendant] and selling them in the Garrett County area. The CC2 also advised that Aaron has made the comment to CC2's daughter that he has used cocaine with his mom at [the Defendant's] residence.

Affiant provided no information pertaining to CC 2, other than identifying him or her as a "concerned citizen." No information regarding the reliability of CC 2 was included, such as whether he/she has provided valuable or truthful information in the past, or what bias or motivation CC 2 may have had in providing the purported information. Similar to the stale nature of the information provided by CC 1, the information from CC 2 was provided more than twenty-nine months prior to execution of the warrant in the instant matter. Additionally, Affiant failed to provide any indication as to *how* CC 2 learned of the purported activity (i.e. personally observed, previously purchased from Defendant, or merely heard *via* rumor), nor was any indication made as to how long prior to February 1, 2012, that CC 2 learned of the purported information.

*III.*     Information from the First Individual Seeking Reduction in Penalties.

Regarding information provided by the First Individual Seeking Reduction in Penalties, Affiant writes:

> On February 3, 2012, your Affiant spoke to an individual who wished to provide information to the Garrett County Narcotics Task Force. The individual wanted to provide information in exchange for a reduction in penalties in an upcoming court case in Garrett County. The following information was obtained: [Defendant] is a major dealer of cocaine, crack cocaine and prescription pills. The individual stated that [the Defendant] goes to Uniontown, PA to obtain cocaine. The individual advised that he/she can purchase cocaine from [the Defendant]. The

individual stated that the Dillsworth boys deliver coke for [the Defendant] and they use [the Defendant's] work vehicles to transport CDS.

Affiant provided no information pertaining to the First Individual Seeking Reduction in Penalties, other than identifying him or her as an individual interested in "[providing] information in exchange for a reduction in penalties."  Affiant again failed entirely to provide any information regarding the reliability of First Individual Seeking Reduction in Penalties, whether he/she has provided valuable or truthful information in the past, necessary information when presented with an informant with obvious bias or motivation in providing the purported information.  This information was also provided in February 2012, more than twenty nine (29) months prior to execution of the warrant and, once again, Affiant failed to denote *how* the First Individual Seeking Reduction in Penalties learned of the purported activity (i.e. personally observed, previously purchased from Defendant, or merely heard *via* rumor), nor was any indication made as to the whether the information known to the First Individual Seeking Reduction in Penalties was recent in any fashion, nor was any indication made as to how long prior to February 3, 2012, that the First Individual Seeking Reduction in Penalties learned of the purported information.

### *IV.*     Information from Concerned Citizen No. 3 (CC3)

Regarding information provided by CC 3, Affiant writes:

> On February 8, 2012, your Affiant received information from Sgt. Brent Sanders of the Garrett County Sheriff's Office. Sgt. Sanders advised that the following information on [Defendant] came from an individual who wished to remain anonymous (herein referred to as CC3), because they would be in fear for their life if their name was mentioned. [Defendant] goes to Mexico with a couple guys with the last name of Glotfelty during the winter months. In Mexico, they meet with people who [the Defendant] buys "speed" from, which are in pill form. CC3 advised that speed pills come to [the Defendant] in Oakland by helicopters. He advised the helicopters are electric or remote controlled which are sent to him in boxes and delivered to [Defendant] by UPS. CC3 further stated [Defendant] is a huge dealer in cocaine which he gets from a black male. The individual described

the black male as being large and his lower teeth are gold. The black male drives a 'beat up' Kia Sportage when he delivers to [Defendant], however, CC3 advised he/she has seen the same black male at Deep Creek Lake before and he was in a newer model "pimped up" Lexus. CC3 advised that the first time he/she saw the black guy, the black male asked CC3 for [Defendant]. CC3 advised the black male that [Defendant] was in his house and the black male asked for the CC3 to get [Defendant]. CC3 advised him to do it his self and the black male said he was not allowed to go into the house. CC3 then went into [Defendant's] house and walked in [Defendant's] office. CC3 observed [Defendant] sitting beside his sage with it open. CC3 advised the safe contained money and cocaine. CC3 advised that he/she observed [Defendant] getting cocaine out of a huge Folgers plastic coffee container and putting it in a plastic baggie. CC3 explained the coffee container probably holds about 1 pound and the cocaine filled it half way. CC3 advised [Defendant] that a black guy wanted to talk to him, and said he was a friend. CC3 claimed [Defendant] then jumped him/her pretty bad about walking in his office and told him/her to get out. CC3 then advised [Defendant] walked out of his house and started towards the "round barn." CC3 said that he/she followed Vaughn. Vaughn and the black male met around the "round barn" beside a culvert where the deal was done. CC3 stated that Justin and Aaron Dillsworth work for [Defendant] and they are the people who are dealing the pills and cocaine around the area. CC3 explained they deal in Bayard, WV; Garrett County and all the way to Reedsville, West Virginia. They will always have [Defendant's] drugs with them and they will toss it if they get pulled over. CC3 also advised [Defendant] cooks drugs in his basement. CC3 wasn't to [sic] clear on what "cooks" meant however he was talking about cocaine. CC3 also advised that [the Defendant] is extremely paranoid and has video surveillance around his house and is constantly watching it.

Affiant again provided no information pertaining to CC 3, other than identifying him/her as a "concerned citizen." Affiant failed entirely to provide any information regarding the reliability of CC 3, whether he/she has provided valuable or truthful information in the past, or what bias or motivation CC 3 had in providing the purported information. Furthermore, there was little to no indicia of reliability in the statements of CC 3 as the statements of CC3 were not even made to the Affiant. In fact, the information provided by CC3 was made known to the Affiant by another law enforcement officer. Additionally, the warrant was executed more than twenty-nine months after Affiant learned of the purported information from CC 3. Again, no indication was made as to how long prior to February 12, 2012, that CC 3 learned of the purported information.

9

V.     Observations of Detective McLaughlin

Regarding information provided by Detective McLaughlin, Affiant writes:

> On February 13, 2012, at approximately 151 hours, Det. McLaughlin was traveling on North Eighth Street in Oakland, Maryland. Det. McLaughlin observed a maroon colored Cadillac Eldorado parked across from [Defendant's] residence. Det. McLaughlin observed a black male and a white female exit the Cadillac. Det McLaughlin obtained West Virginia registration OVS853. The tag comes back on a 1993 Cadillac Eldorado to Jordan Shaffer, 91 Dunmire Road, Eglon, WV.

This information provided by Detective McLaughlin is to place a Cadillac, maroon in color, at the residence of the Defendant more than twenty-nine months prior to Affiant seeking a warrant. In no manner does said observration provide any indication that the Defendant was involved in any wrongdoing at said residence.

VI.     Observations of Corporal David Teets, the Affiant

Regarding information personally observed by the Affiant, Corporal David Teets, Affiant writes:

> On February 15, 2012, your Affiant drove by [the Defendant's] residence. Your Affiant observed a blue Dodge Ran [sic] 1500 parked in his driveway. Your Affiant obtained Maryland registration 5MD8087 from the Dodge. The tag comes back registered on a 2008 Dodge Truck to Winters General Contracting, 113 N. Eighth Street, Oakland, Maryland. Your Affiant has seen [the Defendant] driving this truck on a regular basis.

This information provided by the Affiant is to place a Dodge Ram, blue in color, at the residence of the Defendant more than twenty-nine months prior to Affiant seeking a warrant. In no manner does said observation provide any indication that the Defendant was involved in any wrongdoing at said residence or in said vehicle.

Regarding additional information personally observed by the Affiant, Corporal David Teets, Affiant writes:

> On April 17, 2012 at approximately 1430 hours, your Affiant and Det. McLaughlin were on Swanton Road in Swanton, Maryland. Your Affiant observed a white box truck/bread truck parked near the railroad tracks. Your Affiant turned around near the railroad tracks and observed the truck to have Winters Construction on the side

of it. As your Affiant drove around the front of the vehicle your Affiant observed [the Defendant] in the drives [sic] side of the truck. [The Defendant] observed Det. McLaughlin and myself and then turned his head away. [The Defendant] then made several quick glimpses at us. We then drove away. Your Affiant thought that this was not a normal area for [the Defendant] to be at. There is nothing in this immediate area that would require [the Defendant] to be there.

This information provided by the Affiant in no manner provides any indication that the Defendant was involved in any wrongdoing in said vehicle, other than the Affiant commenting, without substance or basis to conclude so, that the area was not "normal" for the Defendant "to be at." Furthermore, more than twenty seven months separate this purported information by the Affiant and execution of the warrant.

Regarding additional information personally observed by the Affiant, Corporal David Teets, Affiant writes:

On December 12, 2012 at approximately 0600 hours, your Affiant and Det. McLaughlin travelled to Eighth Street in an attempt to pull trash from [the Defendant's] residence. No trash was set out.

On January 23, 2013, at approximately 0530 hours your Affiant, De. McLaughlin, and TFC Bittinger travelled to [the Defendant's] residence in an attempt to pull trash from the residence. There was no trash set out. We did observe [the Defendant's] truck parked in the driveway. Your Affiant has noticed that [the Defendant's] truck has been parked in the same spot for the past week or so. We also observed a TV on in a room.

On February 20, 2013 at approximately 0520 hours, your Affiant and det. McLaughlin drove by [the Defendant's] residence in an attempt to pull rash from the residence. There was no trash set out for pick-up.

On March 13, 2013 at approximately 0500 hours, your Affiant and members of the Garrett County Narcotics Task Force traveled to [the Defendant's] residence in an attempt to obtain trash from the residence. No trash was set out for pick-up.

On March 27, 2013 at approximately 0625 hours, your Affiant, Det. Meyers and TFC Bittinger travelled to [the Defendant's] residence in an attempt to pull trash from the residence. No trash was set out.

On October 16, 2013, your Affiant, TFC Bittinger and Det. Meyers travelled to [the Defendant's] residence in an attempt to pull trash from the residence. We walked to the trash cans that were sitting along Eighth Street across from [the

Defendant's] residence. Once we got to the trash cans an alarm sounded and we had to leave the area.

This information provided by the Affiant in no manner provides any indication that the Defendant was involved in any wrongdoing in said residence. Notably, more than nineteen months separate this purported activity and the Affiant executing the warrant.

Regarding additional information personally observed by the Affiant, Corporal David Teets, Affiant writes:

On February 12, 2013 at approximately 1400 hours, your Affiant observed [the Defendant] parked at Sheetz in Oakland, MD. Your Affiant observed [the Defendant] get into his blue Dodge truck. [The Defendant] had a hard time walking and walked with a bad limp. He then struggled to get into the truck. [The Defendant] then left the area and your Affaint [sic] was unable to follow him.

…

On June 17, 2013, your Affiant conducted a check through the Maryland department of Assessments and Taxation. The following information was obtained: [the Defendant] owns the following properties/houses:
- 113 N. Eighth Street, Oakland, Maryland. This is [the Defendant's] primary residence.
- 116 N. Eighth Street, Oakland, Maryland. This is the garage/apartment that is across from [the Defendant's] residence where Justin Dillsworth is living.
- Dennett Road – this is a lot that is 1.118 acres.
- 122 N. Eighth Street, Oakland, Maryland
- 112 N. Eighth Street, Oakland Maryland
- 108 N. Eighth Street, Oakland, Maryland
- Eighth Street, Oakland, Maryland – this is an 8.5 acre lot.

On June 17, 2013 your Affiant caused a check to be made through the Maryland Motor Vehicle Administration on [the Defendant]. The following information was obtained: Vaughn Veryl Winters, 113 N. 8th Street, Oakland, Garrett County, Maryland, W/M. 5'9", 205 lbs, DOB: 04/30/1952.

…

On October 3, 2013, your Affiant observed [the Defendant] driving a white Dodge Rm truck. Later on that day your Affiant observed that same white Dodge Ram parked at his residence.

On October 4, 2013 at approximately 1345 hours, your Affiant observed the white Dodge Ram parked at the Garrett County Courthouse. Your Affiant obtained

Maryland registration 1A91815 off of the truck. Your Affiant caused a check to me made on Maryland registration 1A91815 and it comes back registered to Patriot Chrysler Dodge Jeep Inc., 2499 Maryland Highway, Oakland, MD.

On October 5, 2013 at approximately 2020 hours, your Affiant drove by [the Defendant's] residence. Your Affiant observed him in the driveway talking to an unknown individual. They were standing beside the white Dodge Ram. At 2100 hours, your Affiant drove by Patriot Chrysler Dodge Jeep. Your Affiant observed [the Defendant's] old blue dodge Ram parked in the back parking lot.

On October 11, 2013 at approximately 1500 hours, your Affiant observed the white Dodge Ram 2500 that your Affiant saw [the Defendant] driving parked at the Garrett County Courthouse. Your Affiant obtained Maryland registration 9AB3524 from the Ram. Your Affiant caused a check to be made on Maryland registration 9AB3524, however the tag comes back not on file.

During January and February 2014, your Affiant has observed [the Defendant] driving the white Dodge Ram 2500 diesel truck. Our Affiant has observed this vehicle parked in his driveway as well.

…

On February 22, 2014 at approximately 1000 hours, your Affiant drove by [the Defendant] residence. Your Affiant observed a red car parked in the driveway. Your Affiant obtained West Virginia registration 6UB466. Your Affiant caused a check to be made of the West Virginia tag and it comes back to Amie McCrum, 108 St. Johns Street, Parsons, West Virginia on a 2006 Chevy Cobalt.

All of the above observations by the Affiant in no manner provide any indication that the Defendant was involved in any wrongdoing or criminal activity. Furthermore, no less than five months (and in some instances more than a year) separate these purported observations by the Affiant and execution of the warrant.

## VII.    Information from  DFC C.B. Meyers

Regarding information provided by DFC C.B. Meyers, Affiant writes:

On February 22, 2012, your Affiant received an e-mail from DFC C.B. Meyers, of the Garrett County Sheriff's Office. The following information was obtained: If [Defendant] is stopped on the road in that blue dodge truck look for a hidden compartment in the engine block that he has built into the truck. I doubt he is traveling dirty much, but the information is good and I trust that he does have that on the truck. He will not have it in the truck with him. Also, if you would get in the

house look for rolled up towels. The money and the dope will be in the towels. The towels will look like just everyday use towels for a bathroom and will not look out of place. The information is good it did not come from a past employee or anybody we deal with on a daily basis wanting anything in return.

Affiant failed to provide any indication as to *how* DFC C.B. Meyers learned of the purported activity (i.e. personally observed, previously purchased from Defendant, or merely heard *via* rumor), nor is any indication made as to the whether the information known to DFC C.B. Meyers is recent in any fashion.  It is likely that said information was learned from a third party, as had DFC C.B. Meyers personally observed any such activity by the Defendant, Affiant would almost certainly have included such basis (notwithstanding that Defendant would likely have been arrested and charged).  Moreover, Affiant neglected to provide any information regarding the reliability of source of DFC C.B. Meyers information, whether he/she has provided valuable or truthful information in the past.  Affiant also failed to provide any indication as to *how* the source learned of the purported activity, as the information may have been passed along through multiple third parties. Furthermore, said information provided by DFC C.B. Meyers was conveyed to Affiant more than twenty nine (29) months prior to execution of the warrant. Similar to the other witness discussed *supra*, no indication is made as to *when* DFC C.B. Meyers learned of the information from the third party source.

Regarding information provided by DFC C.B. Meyers, Affiant writes:

> On April 11, 2014, Det. Meyers and TFC Bittinger were on surveillance in the area of [the Defendant's] residence. At approximately 2000 hours, Det. Meyers and TFC Bittinger observed numerous vehicles in and out of the residence. This took place for approximately two hours. TFC Bittinger and Det. Meyers were unable to obtain any vehicle tag numbers due to watching another residence.

These observations, made over three months prior to Affiant seeking a warrant, provide little indicia of any purported criminal activity.  Rather, it merely indicates that the Defendant may have had a number of guests of visitors on a particular evening on April 11, 2014.

14

VIII.    Information from Concerned Citizen No. 4 (CC4)

Regarding information provided by CC 4, Affiant writes:

> On April 14, 2012, our Affiant received a call from DFC C.B. Meyers. DFC
> Meyers advised that he received a call from an individual who wished to remain
> anonymous (herein referred to as CC4). CC4 advised that David Barsley (unsure if
> spelling on last name is right), a white male about 60 years old, lives on Route 42
> between the Maryland State Police Barracks and Friends Meat Market. David
> drives a pick-up truck. The individual stated that David is connected into [the
> Defendant] and may even be picking up cocaine for [Defendant]. The individual
> also stated that Vaughn is very paranoid right now.

Affiant again provides no information pertaining to CC 4, other than identifying him/her

as a "concerned citizen."   Affiant failed entirely to provide any information regarding the

reliability of CC 4, whether he/she has provided valuable or truthful information in the past, or

what bias or motivation CC 4 had in providing the purported information.  Furthermore, there is

little to no indicia of reliability in the statements of CC 4 as the statements of CC4 were not even

made to the Affiant, and were made more than twenty-seven months prior to Affiant seeking a

warrant.  Additionally, Affiant failed to provide any indication as to how long prior to April 14,

2012, that CC 4 learned of the purported information.

IX.    Information from Confidential Information No. 94-203 (CI 94-203).

Regarding information provided by CI 94-203, Affiant writes:

> During May 20-27, 2012, your Affiant was contacted by Confidential
> Informant 94-203 (herein referred to as CI). The CI advised that he/she could
> purchase Percocet pills from Aaron Dillsworth. The CI advised that Dillsworth is
> selling the Percocet pills at a residence on Frazee Estates Drive. The CI advised
> that Dillsworth has been staying there. During the drug transaction, the CI asked
> Dillsworth about his step dad, [the Defendant]. Dillsworth advised that [the
> Defendant] told him to come over with five and Dillsworth assumed [the
> Defendant] meant $500.00. Dillsworth went to [the Defendant] and handed him
> $500.00 and [the Defendant] laughed at him. [The Defendant] told Dillsworth that
> he meant five ounces. Dillsworth stated he was going to buy a gram and [the
> Defendant] stated he spills a gram on the floor. The CI advised that they were
> talking about cocaine.

On June 25, 2012, your Affiant spoke to CI 94-203. The CI advised that he/she spoke to Aaron Dillsworth during June 14-25, 2012. Dillsworth told the CI that [the Defendant] was currently out of cocaine and Dillsworth was looking for cocaine until [the Defendant] got more in.

Although said information provides a more detailed and first-hand assertion regarding activity involving the Defendant, more than two (2) years separate the purported incidents involving CI 94-203 and Affiant seeking a warrant.

X.      Information from Corporal Zimmerman.

Regarding information provided by Corporal Zimmerman, Affiant writes:

On July 10, 212, your Affiant received information from Cpl. Zimmerman of the Garrett County Sheriff's Office. Cpl. Zimmerman advised he was at the ball field at Southern Garrett High School when he observed a low flying helicopter in the area. Cpl. Zimmerman observed the helicopter land in [the Defendant's] field. Cpl. Zimmerman Advised that the helicopter landed just after 1900 hours and stayed for approximately ten minutes then left. The Garrett County Narcotics Task Force has received has received information in the past that [the Defendant] gets his CDS delivered via helicopter.

The information provided by Cpl. Zimmerman, standalone, lacks any basis to aver that the Defendant was involved in any wrongdoing at said residence on July 10, 2012. Although, in conjunction with CC 3's statements regarding helicopters, a connection can be argued that the Defendant *may* have been involved in some purported wrongdoing, as discussed *supra*, CC-3 had not been shown by Affiant to be a reliable source and there is no indication from Cpl. Zimmerman's statement that the helicopter was transporting anything. Furthermore, said observations by Cpl. Zimmerman were over two (2) years prior to Affiant seeking a warrant.

XI.      Information from Concerned Citizen No. 5 (CC5)

Regarding information provided by CC 5, Affiant writes:

On September 24, 2012, your Affiant spoke to a Concerned Citizen who wished to remain anonymous (herein referred to as CC 5). CC5 advised that he/she worked with an individual who had previously been employed by [the Defendant]. CC5 stated that this individual advised that [the Defendant] would intimidate new

16

employees and get them to start using cocaine. [The Defendant] would then get them addicted to cocaine and before they knew it they were working for [the Defendant] to pay back there [sic] cocaine habit/use instead of obtaining a pay check. The CC also advised that if there was cocaine in Oakland, MD it is always supplied by [the Defendant].

Affiant again provided no information pertaining to CC 5, other than identifying him/her as a "concerned citizen" and failed entirely to provide any information regarding the reliability of CC 5, whether he/she has provided valuable or truthful information in the past, or what bias or motivation CC 5 had in providing the purported information.  Furthermore, there is little to no indicia of reliability in the statements of CC 5, as the statements of CC 5 were in fact the statements of another unidentified individual. Additionally, said information was provided by more than twenty-two (22) months prior to Affiant seeking a warrant, separate the purported information by CC 5 and execution of the warrant, and Affiant failed to provide any indication as to how long prior to September 24, 2012, that CC 4 learned of the purported information.

*XII.*     Information from Confidential Informant No. 94-226 (CI 94-226)

Regarding information provided by CI 94-226, Affiant writes:

On May 20, 2013, your Affiant and Det. Meyers met with Confidential Informant 94-226. The CI provided the following information: [The Defendant] is a major cocaine dealer in the Garrett County, Maryland area. The CI advised that [the Defendant] uses Justin and Aaron Dillsworth to sell his cocaine. CI advised that [the Defendant] uses two stash houses for his cocaine to be delivered. The stash houses were described as being on Fingerboard Road and Kings Run Road. The CI advised that [the Defendant's] supplier will drop the cocaine inside the two houses. The CI advised that the houses are both old abandoned houses.

Affiant provided no information pertaining to CI 94-226, other than identifying him or her as a "confidential informant."  Additionally, the "information" was provided in May of 2013, more than a year prior to the July 18, 2014, warrant application.  Consequently, any information provided by CI 94-226, if believed, was attenuated in the *more than twelve* (12) months that passed between when the information was provided and when the warrant was executed.

Significantly, Affiant failed to provide any indication as to how CI 94-226 learned of the purported activity (i.e. personally observed, previously purchased from Defendant, or merely heard *via* rumor).  Additionally, notwithstanding that more than a year passed between when Affiant learned of the alleged activity from CI 94-226, Affiant failed to include how long prior to May 20, 2013, that CI 94-226 learned of the purported activity.

>    *XIII.*   Information from Confidential Informant No. 94-232 (CI 94-232)

Regarding information provided by CI 94-232, Affiant writes:

>    During June 2013, your Affiant and Det. Meyers spoke to Confidential Informant 94-232. The CI advised the following information: [the Defendant] is a major dealer of cocaine. [The Defendant] gets his cocaine from an unknown black male that delivers it to him. [The Defendant] and the black male use drop off locations. The CI advised that the drop off locations are located in the pin [sic] trees beside [the Defendant's] driveway to his residence, the garage across from his residence and the barns behind [the Defendant's] residence. The CI advised that the black male drives a Harley Davidson motorcycle and a red car. The Black male drops cocaine off to [the Defendant] about once a week. The drops are made in the late night/early morning hours. The CI further advised that Justin Dillsworth sells cocaine for [the Defendant]. Justin currently lives above the garage across from [the Defendant's] residence. The safes contain money and cocaine. The CI advised one of the safes is located in [the Defendant's] office and contains coffee cans and a tackle box that has cocaine in them. The other safe is located in a bedroom back a hallway. This safe contains, cocaine, pills and LSD. The CI further stated that [the Defendant] sells to Dave and Jan (unknown last name), the woman who owns the Long Branch Saloon (Your Affiant knows this woman and her name is Becky Williams) and employees of (the Defendant).

Affiant provided no information pertaining to CI 94-232, other than identifying him or her as a "confidential informant."  Additionally, the "information" was provided in June of 2013, more than a year prior to the July 18, 2014, warrant application.  Consequently, any information provided by CI 94-232, if believed, was attenuated in the *more than twelve* (12) months that passed between when the information was provided and when the warrant was executed. Significantly, Affiant failed to provide any indication as to how CI 94-232 learned of the

purported activity (i.e. personally observed, previously purchased from Defendant, or merely heard *via* rumor) or *when* the purported activity complained of actually took place.

Regarding additional information provided by CI 94-232, Affiant writes:

During June 2013, I spoke to CI 94-232. The CI provided the following information: The CI advised that [the Defendant] has cameras on the back of his house. [The Defendant] installed the cameras because his residence was raided in 2003, and law enforcement made entry through the back door. [The Defendant] also has a little black book that he uses as a drug ledger that he keeps in his desk drawer. The CI also advised that sometimes drop offs are done at the round barn and near the pine trees beside [the Defendant's] residence. The CDS is placed in a cooler and left in the barn. The CI advised that one of the individuals buying from [the Defendant] is a guy names Buck. Buck is a former employee of [the Defendant].

The CI provided information on Dave and Jan Bardsley. The CI stated that Dave and Jan are good friends with [the Defendant] and Sheila (Vaughan's girlfriend & the Dillsworth boy's mother). Dave works at the rest area along I-68 near Friendsville, Maryland. [The Defendant] supplies Dave and Jan cocaine. Sheila and Jan go out together around Deep Creek Lake. Sheila will also sell cocaine to the owners of the Long Branch Saloon in Mt. Lake Park, Maryland. The owners of the Long Branch Saloon will also come to [the Defendant's] residence to purchase cocaine.

The CI advised that the black male that brings [the Defendant] his cocaine goes by the name Stoney. Stoney is described as a black male, bigger guy, in his late 40's to early 50's. Stoney wears a lot of jewelry, and is from the Baltimore, Maryland area. The majority of the time [the Defendant] has the cocaine delivered to him, however every once in a while Stoney meets [the Defendant] and Sheila in Morgantown, WV.

…

On June 26, 2013 your Affiant spoke to CI 94-232. The CI provided the following information: CI advised that Time Tasker and Dave Jones is working for [the Defendant]. Jones is selling for [the Defendant]. The CI also provided the following phone numbers for [the Defendant] and other individuals that are close to him:
> Vaughn Winters' cell – 301-501-1567
> Vaughn Winers' house – 31-334-2522
> Sheila Dillsworth Cell – 301-501-7001
> Harold Dillsworth Cell – 301-501-7841
> Harold Dillsworth Cell – 410-441-422

Affiant provided no information pertaining to CI 94-232, other than identifying him or her as a "confidential informant."  Additionally, the "information" was provided in June of 2013, more than a year prior to the July 18, 2014, warrant application.  Consequently, any information provided by CI 94-232, if believed, was attenuated in the *more than twelve* (12) months that passed between when the information was provided and when the warrant was executed.  Moreover, Affiant failed to provide any indication as to how CI 94-232 learned of the purported activity (i.e. personally observed, previously purchased from Defendant, or merely heard *via* rumor) or *when* the purported activity complained of actually took place.

    *XIV.*       Information from Confidential Information No. 94-230 (CI 94-230)

Regarding information provided by CI 94-230, Affiant writes:

> During June 2013, TFC S. Bittinger spoke to CI 94-230. The CI advised that Laura Stemple and Brad Ridder sell cocaine, molly, and marijuana. The CI advised that they get their cocaine from an older man that lives on a half of a farm. The CI advised that to get to the house you go down Memorial Drive and turn right onto Eighth Street and the farm is at the top of the hill. Your Affiant is familiar with these directions and know [sic] the residence to be [the Defendant's]. The CI further stated that Laura Stemple was obtaining 8 Balls of cocaine from the old man. Your Affiant also knows that Laura Stemple used to be in a relationship with Justin Dillsworth. Justin's mother is living with [the Defendant].

Affiant provided no information pertaining to CI 94-230, other than identifying him or her as a "confidential informant."  Additionally, the "information" was provided in June of 2013, more than a year prior to the July 18, 2014, warrant application.  Consequently, any information provided by CC 1, if believed, was attenuated in the *more than twelve* (12) months that passed between when the information was provided and when the warrant was executed.  Significantly, Affiant failed to provide any indication as to how CI 94-232 learned of the purported activity (i.e. personally observed, previously purchased from Defendant, or merely heard *via* rumor) or *when* the purported activity complained of actually took place.

*XV.*    Information from Major Mike Bittinger

Regarding information provided by Major Bittinger, Affiant writes:

On August 21, 2013 at approximately 1940 hours, Major Mike Bittinger of the Garrett County Sheriff's Office was traveling on Eighth Street, Oakland, Maryland when he observed Mike Inglese's vehicle a blue colored small passenger car with a table Rock Inn sign on top, pull into the lane that runs beside [the Defendant] residence and goes back to the barns. Your Affiant knows that Mike and Phyliss Inglese were arrested in February 2002 by the Garrett County Narcotics Task Force on felony cocaine charges.

The information provided by Major Bittinger does not, itself, provide any indication that the Defendant was involved in any wrongdoing at said residence. Furthermore, more than eleven months separate this purported information by Cpl. Zimmerman and execution of the warrant, and more than fourteen *years* separate the purported *arrest* of Phyliss Inglese and warrant application.

XVI.    Information from Concerned Citizen No. 6 (CC6)

Regarding information provided by CC 6, Affiant writes:

On November 26, 2013 Trooper First Class Andrew Farrell, Maryland State Police, received the following information about [the Defendant]: TFC Farrell spoke to a Concerned Citizen (herein referred to as CC6). CC6 stated that a black male delivers 4-6 ounces of cocaine every week to [the Defendant] (random days, but weekly). CC6 said the unknown male drives a red Mazda and will drop the cocaine off in the barn (black or brown) behind the house. [The Defendant] then waits at least 30 minutes until he will come out and retrieve it. CC also said the barn and surrounding areas are filled with cameras. CC6 said you will never be able to approach it without him seeing you. CC6 said the male will come very late in the night and early morning to avoid police. CC6 advised that the male is also wanted in Maryland and he doesn't think he is from here. In October/November 2013, CC6 stated he was doing work for [the Defendant] at his residence and CC6 was offered cocaine and observed [the Defendant] snorting cocaine. CC6 said Jamie Stanton frequents [the Defendant's] house but would not elaborate.

Affiant again provided no information pertaining to CC 6, other than identifying him/her as a "concerned citizen."  Affiant failed entirely to provide any information regarding the reliability of CC 6, whether he/she has provided valuable or truthful information in the past, or what bias or

motivation CC 6 had in providing the purported information.  Furthermore, there is little to no

indicia of reliability in the statements of CC 6 as the statements of CC6 were not even made to

the Affiant. In fact, the information provided by CC6 was made known to the Affiant by another

law enforcement officer, conveyed to Affiant more than eight (8) months prior to Affiant seeking

a warrant. Additionally, although the information was conveyed no less than eight months prior

to Affiant, no indication is made as to when the reporting separate the purported information by

CC 6 and execution of the warrant.  Additionally, Affiant fails to provide any indication as to

*when* the actual purported observations were made or learned of.

XVII.     Information from Concerned Citizen No. 7 (CC7)

Regarding information provided by CC 7, Affiant writes:

> During December 2013, Det. Meyers spoke to an individual who wished to remain
> anonymous (herein referred to as CC7). CC7 advised that [the Defendant] is still
> using and dealing cocaine. CC7 further stated that [the Defendant] is doing things
> now that he would have not done in the past. CC7 further stated that [the
> Defendant] is hanging with individuals who bring the police around him and [the
> Defendant] would not allow those individuals to be near him. [The Defendant]
> recently spoke to an old friend of his who stopped by his house and [the
> Defendant] immediately offered him cocaine and wanted the individual to use it.
> CC7 also stated that [the Defendant] has security cameras around the residence
> especially around the barns and outbuildings. No other information was obtained.

Affiant again provided no information pertaining to CC 7, other than identifying him/her as a

"concerned citizen."  Affiant failed entirely to provide any information regarding the reliability

of CC 7, whether he/she has provided valuable or truthful information in the past, or what bias or

motivation CC 7 had in providing the purported information.  Furthermore, there is little to no

indicia of reliability in the statements of CC 7, as the statements of CC7 were not even made to

the Affiant. In fact, the information provided by CC7 was made known to the Affiant by another

law enforcement officer more than seven months prior to Affiant seeking a warrant.

Additionally, Affiant failed to provide any indication as to *when* the actual purported observations were made or learned of.

*XVIII.*    Information from Justin Dillsworth

Regarding information provided by Justin Dillsworth, Affiant writes:

> On May 1, 2014, the Garrett County Sheriff's Office received a call from Justin Dillsworth. Dillsworth claimed that he was in an argument with [the Defendant] and [the Defendant] had struck him with a vehicle and then threatened him with a gun. Dillsworth advised that [the Defendant] never displayed a firearm but claims that [the Defendant] does have firearms in his residence, Capt. Murphy of the Garrett County Sheriff's Office went to the [the Defendant's] residence and spoke to [the Defendant]. Capt. Murphy found the case to be unfounded.

Inclusion of the purported May 1, 2014 incident requires no response, as it is commentary of an incident that was determined to be false.

*XIX.*    Information from Confidential Informant No. 94-231 (CI 94-231)

Regarding information provided by CI 94-231, Affiant writes:

> TFC Bittinger received information from CI-231 that [the Defendant] is a user and dealer of cocaine. The CI advised that he/she has seen [the Defendant] using cocaine. The CI advised that he/she will be able to provide us more information on [the Defendant].
>
> On June 6, 2014, TFC Bittinger received a call from CI 94-231. The CI advised that [the Defendant] pays his employees in cocaine. The CI further stated one of his employees, Curtis DeWitt gets paid in cocaine. On June 4, 2014, the Garrett County Narcotics Task Force executed a search warrant on Curt DeWitt's residence. DeWitt advised that he is working for [the Defendant]. The CI further stated [the Defendant] keeps cocaine in a brief case. Inside the brief case is a zippered pouch that the cocaine is in. [The Defendant] uses cut off straws to snort cocaine with.

Affiant provided no information pertaining to CI 94-231, other than identifying him or her as a "confidential informant."   Additionally, Affiant failed to provide any indication as to how CI 94-232 learned of the purported activity (i.e. personally observed, previously purchased from Defendant, or merely heard *via* rumor).   Notably, although Affiant writes that a warrant

was executed at the residence of Mr. DeWitt, no information was provided by Affiant that any evidence was obtained as a result of said warrant that would support or substantiate any assertion of CI 94-231, other than the assertion that Mr. DeWitt does, in fact, work for the Defendant. Although far more recent than many of the other statements or information obtained by Affiant, *supra,* the information by CI 94-231 was provided approximately six (6) weeks prior to Affiant seeking a warrant.

> *XX.* Information from the Second Individual Seeking Reduction in Penalties

> Regarding information provided by Second Individual Seeking Reduction in Penalties, Affiant writes:

>> On June 7, 2014, Detective Meyers spoke with an individual who wished to provide information to the task force in exchange for a reduction of penalties in an upcoming court case in Garrett County. It was determined not to work with the individual, however, the individual provide the following information:

>> [The Defendant] is major dealer of cocaine. [The Defendant] owns a construction business. [The Defendant] pays his employees in cocaine. [The Defendant] gets cocaine from a black male. The black male comes to [the Defendant's] residence once every two weeks and brings approximately a half of kilo of cocaine. The black male comes to the house between 0100-0500 hours. The black male is only there for a short period of time. The individual advised that he/she has purchased cocaine from [the Defendant]. The individual advised that [the Defendant] drives with cocaine on him all of the time. The individual also advised that [the Defendant] has several firearms at his residence.

Affiant provided no information pertaining to the Second Individual Seeking Reduction in Penalties, other than identifying him or her as an individual interested in "[providing] information in exchange for a reduction in penalties."   Affiant again failed entirely to provide any information regarding the reliability of the Second Individual Seeking Reduction in Penalties, whether he/she has provided valuable or truthful information in the past, necessary information when presented with an informant with obvious bias or motivation in providing the purported information.  Significantly, although Affiant notes that "It was determined not to work

with the individual," Affiant failed to elaborate or explain the basis of said decision, which presumably related to the reliability and/or credibility of the informant.   Additionally, Affiant failed to provide any indication as to *how* the Second Individual Seeking Reduction in Penalties learned of the purported activity (i.e. personally observed, previously purchased from Defendant, or merely heard *via* rumor), nor was indication made as to *when* the actual purported observations were made or learned of.

*XXI.*     Defendant's criminal history.

Regarding the Defendant's "criminal history", Affiant writes:

> On June 12, 2014, your Affiant caused a check to be made through the National Crime and Information Center on [the Defendant]. The following information was obtained:

> On November 14, 2002, [the Defendant] was arrested by the Garrett County Sheriff's Office for CDS: Possession Marijuana, CDS Possession of Firearms, 4 counts of CDS: Possession Not Marijuana, Reg Firearm: Illegal Possession, CDS: Possession of Paraphernalia, Dest Device Man/Pos/Dist. [The Defendant] was found guilty of CDS: Possession of Marijuana. All other charges were Nolle Prosequi.

> On August 24, 1999, [the Defendant] was charged by the Garrett County Sheriff's Office for two counts of Violation of an ExParte Order. Both charges were Nolle Prosequi.

> On October 10, 1990, [the Defendant] was arrested by the Garrett County Sheriff's Office for CDS: possession. [the Defendant] was found Not Guilty.

> On June 18, 1988, [the Defendant] was arrested by the Garrett County Sheriff's Office for two counts of CDS: Unlawful MFGR ETC, and CDS: Unlawful Possession. All charges were dismissed by the State.

> On August 20, 1987, [the Defendant] was arrested by MSP Cumberland for two counts of CDS:Unlawful Possession. [The Defendant] was found guilty on one of the charges and Not Guilty on the other.

> On August 9, 1984, [The Defendant] was arrested by MSP Cumberland for two counts of CDS: Unlawful MFGR ETC. [The Defendant] was found Guilty of one count of CDS: Unlawful MFGR ETC.

25

On June 11, 2014 your Affiant caused a check to be made through Maryland State Police Gun Center for [the Defendant]. The following information was obtained: [The Defendant] is a Prohibited Felon.

Any argument that any of these incidents are indicative or informative as to the Defendant's activity in 2014 is highly attenuated and lacks any *substantial* value in establishing criminal activity in July 2014. Notably, even the most recent of the Defendant's charges/convictions, in 2002, are so attenuated as to be excluded from impeaching a Defendant upon election to testify (Federal Rule of Evidence 609).

*XXII.*    Training, Knowledge and Experience.

Affiant's last basis for the warrant is the "training, knowledge and experience of your Affiant."

Although Affiant enumerates his experience and training involving CDS, said history cannot overcome the lack of substance in the warrant application and is no substitute for the requirement that Affiant provide sufficient facts and basis to substantiate a request for a warrant.

**<u>Argument</u>**

**I.  The Statements of Affiant in the Affidavit Were Made in Reckless Disregard for their Truth.**

The crux of this matter rests upon whether the attenuated and indirect facts and statements included in the Affidavit were made in reckless disregard for their truth.  In detailing the information gleaned from the Concerned Citizens, Affiant failed entirely to provide any information regarding the reliability of any of the informants, including whether they had provided valuable or truthful information in the past, what bias or motivation they may have had, and when the purported activity was taking place.  Significantly, Affiant failed entirely to

26

provide a time frame as to when the purported CDS activity of Defendant was taking place.  In fact, the informants may and very possibly were indicating activity and information they had learned during the time surrounding Defendant's prior CDS charges.

Affiant relies exclusively on the statements of the informants as a basis for requesting a warrant.  However, by failing to detail and include the critical factors as to the time frame, reliability, bias, etc., of the informants, the Affidavit was made in reckless disregard for the truth of the matters therein, as any Judge reviewing the Affidavit would rely on those statements in assessing whether the evidence is sufficient to conclude that a warrant is appropriate, and would infer that the information was, in fact, reliable, timely and directly related to the matter at issue. Contrast *Commonwealth v. Alvarez*, 422 Mass. 198, 208 (1996) (minor inadvertent misstatement in affidavit was "a far cry from recklessness"). Any such inference by a Judge reviewing the Affidavit, however, would have been improper, as the scant paragraphs detailing the information provided by the informants provides no basis to substantiate or properly infer that the Defendant was involved in CDS activity to the degree necessary to obtain a warrant *at the time the application was filed.*

Even assuming *arguendo* that Affiant did not intentionally intend to mislead a Judge reviewing the Affidavit, Affiant's inclusion of the statements were made reckless disregard for their truth, as a plain reading of the Affidavit in the manner provided by Affiant insinuates that the statements of the informants are reliable, unbiased, timely and related, which is unsubstantiated and, in light of the attenuated nature of the information as well as Defendant's earlier CDS charges, is improper.

Additionally, the entirety of the "CDS investigation" by members of the local law enforcement only served to place Defendant at his residence and provided information regarding

his vehicle(s).  Affiant indicates that the investigation started in February 2012 and continued for many months thereafter regarding suspected CDS activity of Defendant.  Notably, Affiant provides only a single instance in which various individuals were seen coming and going from Defendant's residence after staying a short period. There was no evidence ever recovered from a "trash pull" that would have evidenced CDS-related activity at Defendant's residence (and is known to be indicative of CDS activity).  In fact, no direct evidence of any kind was ever obtained that indicated any form of CDS activity at Defendant's residence.

The Affiant did include dates and times of interviews and other communications that provide the information used in the Affidavit. However, the Affiant failed to provide any indication as to when the purported activity was actually observed.

## IV. Conclusion

In the case *sub judice*, and discussed *supra,* Affiant includes assertions and information in the warrant application made in reckless disregard for their truth. Consequently, Defendant has satisfied the requirement of a "preliminary showing" that the affiant included a statement with reckless disregard for the truth.  *Franks*, 438 U.S. at 155-156. Additionally, as the Affidavit is almost exclusively based on the statements of the informants, Defendant has satisfied the second requirement that he show that the challenged material is necessary to a finding of probable cause.  *Id.*

Consequently, based on the authorities cited and the reasons aforesaid, Defendant requests that he be granted a Franks hearing and/or that his motion to suppress be allowed.

Respectfully Submitted,


__/s/ Craig M. Kadish_____
Craig M. Kadish, Esquire
*Kadish, Forster & Fastovsky, LLC*
401 E. Pratt Street, Suite 2332
Baltimore, Maryland 21202
(410) 8374-0020
***Attorneys for Defendant***

## CERTIFICATE OF SERVICE

     I, Craig M. Kadish, Esquire, counsel for the above-captioned Defendant hereby certify that on this 21st day of November, 2014, the document attached hereto was filed electronically *via* CM/ECF, and that service was made electronically as a result of such service upon Michael Hanlon, Esquire, United State's Attorney for the District of Maryland.




__/s/ Craig M. Kadish_____
Craig M. Kadish, Esquire
*Kadish, Forster & Fastovsky, LLC*
401 E. Pratt Street, Suite 2332
Baltimore, Maryland 21202
(410) 8374-0020
***Attorneys for Defendant***

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | |
| | * | CASE NO.: 1: 14-cr-00485-GLR |
| WINTERS, VAUGHN VERYL | * | |
| | * | |
| Defendant | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## <u>ORDER</u>

Upon consideration of the Defendant's motion for a hearing on the affidavit of Corporal

David Teets and subsequently issued warrant, it is hereby:

**ORDERED,** that a hearing be set for the _____ day of _____, 201____,

on Defendant's Motion.


_____
**JUDGE**


Cc:

Craig M. Kadish, Esquire
Michael Hanlon, Esquire

EXHIBIT 1

## APPLICATION and AFFIDAVIT for SEARCH WARRANT

To: The HONORABLE _H. Jack Price_ , Judge of the District Court, Allegany County, Maryland.

Application is hereby made for a Search and Seizure Warrant in that there is probable cause to believe that a crime is being committed in that the laws relating to Controlled Dangerous Substances, as defined in Maryland Criminal Law Article, Title 5 of the 2012 edition, dealing generally with Controlled Dangerous Substances are being violated at 113 N. Eighth Street, Oakland, Garrett County, Maryland which is listed as Map 0111 Parcel 0280 and the adjoining property listed as Map 0111 Parcel 2184 as listed in the Maryland Department of Assessments and Taxation, attached hereto and incorporated by reference thereof.

The dwelling can be further described as a ranch style residence with a basement. The residence has tan/brown colored stack stone siding with brown/tan colored shingle roof. The residence has a brown front door. Beside the front door attached to the residence is the numbers "113". There is a white fence that has stone pillars around the back of the residence. There is a pool inside the fence perimeter. The adjoining property described as Map 0111 Parcel 02184 is a 1.18 acre parcel that has numerous outbuildings. The residence and property can be further identified by your Affiant.

The name of your Affiant is Corporal David Teets, Garrett County Sheriff's Office, Garrett County Narcotics Task Force. Your Affiant has been a police officer for (13) thirteen years, and satisfactorily completed the Maryland Police Training Academy (19 weeks), which included courses in the identification and recognition of Controlled Dangerous Substances, which is mandated by the Maryland Police Training Commission. Your Affiant has been a road officer from 2001 to April 2005, when he was assigned to the Garrett County Narcotics Task Force. While performing as a road officer your Affiant made numerous arrests for violations of Maryland's Controlled Dangerous Substance laws that resulted in convictions. These arrests included but are not limited to marijuana and related crimes. Your Affiant has assisted the Garrett County Narcotics Task Force in the execution of numerous search and seizure warrants. While assisting the Task Force your Affiant assisted in the arrest of numerous subjects for violations of Maryland's Controlled Dangerous Substance laws. Your Affiant has participated in the preparation and/or execution of Search and Seizure Warrants relating to violations of the Controlled Dangerous Substance Laws, and has participated in the arrest of persons in violation of Controlled Dangerous Substance Laws. Your Affiant has learned to recognize various types of Controlled Dangerous Substances including, but not limited to the following: marijuana, marijuana plants, the odor of burnt marijuana and the odor of raw marijuana, powder cocaine, rock cocaine, heroin, methamphetamine, MDMA (ecstasy), ketamine, and the different styles of manufacturing and packaging for sales.

In September 2002, your Affiant attended a (1) one day seminar on Drug Identification, taught by the Northeast Counterdrug Training Center. This seminar covered topics dealing with the recent club drugs, raves, cocaine, marijuana, and prescription pills.

EXHIBIT 1

In July 2003, your Affiant attended a 2 day class, conducted by the Public Agency Training Council. Topics of instruction included: identification of marijuana, cocaine, heroin, and club drugs; various types of packaging and prices commonly used with controlled dangerous substances.

In April 2004, your Affiant attended a (7) seven day Undercover Drug Law Enforcement Training class, taught by the Maryland State Police and Northeast Counterdrug Training Center. Topics of instruction included developing and working with confidential informants, surveillance and counter surveillance, undercover drug purchases, search warrant preparation, raid planning, and service of search warrants.

In April 2005, your Affiant was transferred to the Garrett County Narcotics Task Force, with the responsibility of conducting investigation into the alleged violations of controlled dangerous substance laws. Your Affiant has participated in the preparation and/or execution of search and seizure warrants relating to violations of the controlled dangerous substance laws, and has made and participated in the arrest of persons in violation of controlled dangerous substance laws.

In February 2006, your Affiant attended a (3) three day Advanced Clandestine Lab Investigations class. Topics of instruction included the recognition of methamphetamines, and LSD, and how they are made.

In June 2006, your Affiant attended a (1) one day Marijuana Spotting School class. Topics included spotting and recognition of marijuana plants from the air and how to investigate outdoor marijuana grows.

In February 2007, your Affiant attended a (2) two day Undercover Operations Training Conference. Topics of instruction were use of informants, working in an undercover capacity and working as the lead investigator in an undercover assignment.

In October 2009, your Affiant attended a one day heroin Table Top Organization (TTO) training. Topics of discussion included poppy cultivation and heroin production, concealment methods, how TTO's operate (packaging and distribution) and recognizing drug records.

In April 2010, your Affiant attended a one day training on Completing The Traffic Stop. Topics of discussion included hidden compartments in vehicles and signs and indicators of drug traffickers.

In May 2010, your Affiant attended a 36 hour training in Advanced Gangs and Narcotics Investigations. Topics of discussion included How to investigate Reverse Narcotic Investigations, Undercover Operations, Tactical Narcotics Techniques, Title III Investigations, Gang and Fraud Investigations and Organization drug operations.

In November 2010, your Affiant attended a one day training seminar on Pharmaceutical

EXHIBIT 1

Diversion Investigation. Topics covered included the DEA Diversion Program, Tactical Diversion Briefing, Internet Pharmaceutical Diversion, Pain Management, Emerging Trends in Pharmaceutical Use and Abuse, Methods of Diversion and Federal Prosecution and Heroin Overdose Deaths.

In June 2011, your Affiant attended a one day Recertification Marijuana Spotting School class, instructed by the Maryland State Police and the Maryland Army National Guard Counter Drug Task Force.   Topics included spotting and recognition of marijuana plants from the air and how to investigate outdoor marijuana grows.

In September 2011, your Affiant attended the MAGLOCLEN Narcotics training conference. Topics of instruction included, Bath Salts and Synthetic Marijuana and the growing problems and how they are being abused, and how to know if individuals are abusing these types of chemicals.

In November 2011 your Affiant attended a one day training instructed by the Honorable Michael P. Whalen, 7th Judicial Circuit Court Judge of Maryland.  Judge Whalen's topic of instruction included Search Warrants and 4th Amendment training relating to homes and vehicles

In March 2012 your Affiant was assigned to handle a narcotics detection canine. During March of 2012 your Affiant attended and completed an 80 hours course for narcotics detection police service canine at Shallow Creek Kennels, Inc. Your Affiant received certification as a canine team through the North American Police Work Dog Association(NAPWDA).

In June 2014, your Affiant attended a one day training instructed by Vickie Siedel, Drug Enforcement Administration Forensic Chemist. Topic of instruction was the Anatomy of the "One Pot"/ "Shake N Bake" method for manufacturing Methamphetamine.

In support of this application, and as the basis for probable cause, your Affiant deposes and says:

During February, 2012, your Affiant initiated an investigation into a violation of Maryland's Controlled Dangerous Substance Laws. Your Affiant was instructed by Sgt. Llewellyn to open an investigation on Vaughn Winters and his involvement in the use and sales of CDS in Garrett County, Maryland. During November 2011, a Concerned Citizen (herein referred to as CC1) contacted the Garrett County Narcotics Task Force and provided information on Vaughn Winters.  CC1 advised that Winters is a major dealer of cocaine and prescription pills. Winters is also a user as well.  Your Affiant is familiar with Vaughn Winters. Your Affiant has been assigned to the Garrett County Narcotics Task Force since April of 2005. During this time, your Affiant has assisted on investigations and received information on Vaughn Winters.

On February 1, 2012, your Affiant spoke to a Concerned Citizen(herein referred to as

CC2) on the phone.  CC2 advised the following information:

Vaughn Winters is supplying cocaine and prescription pills to the Garrett County area. Aaron Dillsworth, who works for Winters and whose mother is living with and dating Winters, is obtaining cocaine and prescription pills from Winters and selling them in the Garrett County area. The CC2 also advised that Aaron has made the comment to CC2's daughter that he has used cocaine with his mom at Vaughn's residence.

On February 3, 2012, your Affiant spoke to an individual who wished to provide information to the Garrett County Narcotics Task Force. The individual wanted to provide information in exchange for a reduction in penalties in an upcoming court case in Garrett County. The following information was obtained: Vaughn Winters is a major dealer of cocaine, crack cocaine and prescription pills. The individual stated that Vaughn goes to Uniontown, PA to obtain cocaine. The individual advised that he/she can purchase cocaine from Vaughn. The individual stated that the Dillsworth boys deliver coke for Vaughn and they use Vaughn's work vehicles to transport CDS.

On February 8, 2012, your Affiant received information from Sgt. Brent Sanders of the Garrett County Sheriff's Office. Sgt. Sanders advised that the following information on Vaughn Winters came from an individual who wished to remain anonymous (herein referred to as CC3), because they would be in fear for their life if their name was mentioned.
Vaughn goes to Mexico with a couple of other guys with the last name of Glotfelty during the winter months. In Mexico, they meet with people who Vaughn buys "speed" from, which are in pill form. CC3 advised the speed pills come to Vaughn in Oakland by helicopters. He advised the helicopters are electric or remote controlled which are sent to him in boxes and delivered to Vaughn by UPS. CC3 further stated Vaughn is a huge dealer in cocaine which he gets from a black male. The individual described the black male as being large and his lower teeth are gold. The black male drives a "beat up" Kia Sportage when he delivers to Vaughn, however, CC3 advised he/she has seen the same black male at Deep Creek Lake before and he was in a newer model "pimped up" Lexus. CC3 advised that the first time he/she saw the black guy, the black male asked CC3 for Vaughn. CC3 advised the black male that Vaughn was in his house and the black male asked for the CC3 to get Vaughn. CC3 advised him to do it his self and the black male said he was not allowed to go into the house. CC3 then went into Vaughn's house and walked in Vaughn's office. CC3 observed Vaughn sitting beside his safe with it open. CC3 advised the safe contained money and cocaine. CC3 advised that he/she observed Vaughn getting cocaine out of a huge Folgers plastic coffee container and putting it in a plastic baggie. CC3 explained the coffee container probably holds about 1 pound and the cocaine filled it half way. CC3 advised Vaughn that a black guy wanted to talk to him, and said he was a friend. CC3 claimed Vaughn then jumped him/her pretty bad about walking in his office and told him/her to get out. CC3 then advised when he/she went back outside the Sportage was still there but he/she didn't see the black male. CC3 advised Vaughn walked out of his house and started towards the "round barn." CC3 said that he/she followed Vaughn. Vaughn and the black male met around the "round barn" beside a culvert where the deal was done. CC3 stated that Justin and Aaron Dillsworth work for Vaughn and they are the people who are dealing the pills and cocaine around the area. CC3 explained they deal in Bayard, WV; Garrett County and all the way to Reedsville, West Virginia. They will always have Vaughn's drugs with them and they will toss it if they get

pulled over. CC3 also advised Vaughn cooks drugs in his basement.  CC3 wasn't to clear on what "cooks" meant however he was talking about cocaine.  CC3 also advised that Vaughn is extremely paranoid and has video surveillance around his house and is constantly watching it.

On February 13, 2012 at approximately 1515 hours, Det. McLaughlin was traveling on North Eighth Street in Oakland, Maryland.  Det. McLaughlin observed a maroon colored Cadillac Eldorado parked across from Vaughn's residence.  Det. McLaughlin observed a black male and a white female exit the Cadillac.  Det. McLaughlin obtained West Virginia registration OVS853. The tag comes back on a 1993 Cadillac Eldorado to Jordan Shaffer, 91 Dumire Road, Eglon, WV.

On February 15, 2012, your Affiant drove by Winters' residence.  Your Affiant observed a blue Dodge Ran 1500 parked in his driveway.  Your Affiant obtained Maryland registration 5MD8087 from the Dodge. The tag comes back registered on a 2008 Dodge Truck to Winters General Contracting, 113 N. Eighth Street, Oakland, Maryland.  Your Affiant has seen Vaughn Winters driving this truck on a regular basis.

On February 22, 2012, your Affiant received an e-mail from DFC C.B. Meyers, of the Garrett County Sheriff's Office..  The following information was obtained:
If Vaughn Winters is stopped on the road in that blue dodge truck look for a hidden compartment in the engine block that he has built into the truck. I doubt he is traveling dirty much, but the information is good and I trust that he does have that on the truck. He will not have it in the truck with him. Also, if you would get in the house look for rolled up towels. The money and the dope will be in the towels. The towels will look like just everyday use towels for a bathroom and will not look out of place.  The information is good it did not come from a past employee or anybody we deal with on a daily basis wanting anything in return.

On April, 14, 2012, your Affiant received a call from DFC C.B. Meyers. DFC Meyers advised that he received a call from an individual who wished to remain anonymous (herein referred to as CC4). CC4 advised that David Barsley(unsure if spelling on last name is right) , a white male about 60 years old, lives on Route 42 between the Maryland State Police Barracks and Friends Meat Market. David drives a pick-up truck. The individual stated that David is connected into Vaughn Winters and may even be picking up cocaine for Vaughn. The individual also stated that Vaughn is very paranoid right now.

On April 17, 2012 at approximately 1430 hours, your Affiant and Det. McLaughlin were on Swanton Road in Swanton, Maryland. Your Affiant observed a white box truck/bread truck parked near the railroad tracks. Your Affiant turned around near the railroad tracks and observed the truck to have Winters Construction on the side of it. As your Affiant drove around the front of the vehicle your Affiant observed Vaughn Winters in the drives side of the truck. Vaughn observed Det. McLaughlin and myself and then turned his head away. He then made several quick glimpses at us.  We then drove away.  Your Affiant thought that this was not a normal area for Vaughn to be at. There is nothing in this immediate area that would require Vaughn to be there.

EXHIBIT 1

During May 20-27, 2012, your Affiant was contacted by Confidential Informant 94-203(herein referred to as CI). The CI advised that he/she could purchase Percocet pills from Aaron Dillsworth. The CI advised that Dillsworth is selling the Percocet pills at a residence on Frazee Estates Drive.  The CI advised that Dillsworth has been staying there.

During the drug transaction, The CI asked Dillsworth about his step dad, Vaughn Winters. Dillsworth advised that Vaughn told him to come over with five and Dillsworth assumed Vaughn meant $500.00. Dillsworth went to Vaughn and handed him $500.00 and Vaughn laughed at him. Vaughn told Dillsworth that he meant five ounces. Dillsworth stated he was going to buy a gram and Vaughn stated that he spills a gram on the floor. The CI advised that they were talking about cocaine.

On June 25, 2012, your Affiant spoke to CI 94-203.  The CI advised that he/she spoke to Aaron Dillsworth during June 14-25, 2012.  Dillsworth told the CI that Vaughn Winters was currently out of cocaine and Dillsworth was looking for cocaine until Winters got more in.

On July 10, 2012, your Affiant received information from Cpl. Zimmerman of the Garrett County Sheriff's Office.  Cpl. Zimmerman advised he was at the ball fields at Southern Garrett High School when he observed a low flying helicopter in the area. Cpl. Zimmerman observed the helicopter land in Vaughn Winters' field. Cpl. Zimmerman advised that the helicopter landed just after 1900 hours and stayed for approximately ten minutes then left.

The Garrett County Narcotics Task Force has received information in the past that Vaughn Winters gets his CDS delivered via helicopter.

On September 24, 2012, your Affiant spoke to a Concerned Citizen who wished to remain anonymous(herein referred to as CC5).  CC5 advised that he/she worked with an individual who had previously been employed by Vaughn Winters.  CC5 stated that this individual advised that Vaughn would intimidate new employees and get them to start using cocaine. Vaughn would then get them addicted to cocaine and before they knew it they were working for Vaughn to pay back there cocaine habit/use instead of obtaining a pay check. The CC also advised that if there was cocaine in Oakland, MD it is always supplied by Vaughn.

On December 12, 2012 at approximately 0600 hours, your Affiant and Det. McLaughlin travelled to Eighth Street in an attempt to pull trash from the Winters' residence.  No trash was set out.

On January 23, 2013, at approximately 0530 hours your Affiant, Det. McLaughlin and TFC Bittinger travelled to Winters' residence in an attempt to pull trash from the residence. There was no trash set out. We did observe Winter's truck parked in the driveway. Your Affiant has noticed that Vaughn's truck has been parked in the same spot for the past week or so. We also observed a TV on in a room.

On February 12, 2013 at approximately 1400 hours, your Affiant observed Vaughn parked at Sheetz in Oakland, MD. Your Affiant observed Vaughn get into his blue Dodge truck. Vaughn had a hard time walking and walked with a bad limp. He then struggled to get into the truck. Vaughn then left the area and your Affaint was unable to follow him.

On February 20, 2013 at approximately 0520 hours, your Affiant and Det. McLaughlin drove by Winters' residence in an attempt to pull trash from the residence. There was no trash set out for pick-up.

On March 13, 2013 at approximately 0500 hours, your Affiant and members of the Garrett County Narcotics Task Force traveled to Winter's residence in an attempt to obtain trash from the residence. No trash was set out for pick-up.

On March 27, 2013 at approximately 0625 hours, your Affiant, Det. Meyers and TFC Bittinger travelled to Winter's residence in an attempt to pull trash from the residence. No trash was set out.

On May 20, 2013 your Affiant and Det. Meyers met with Confidential Informant 94-226. The CI provided the following information: Vaughn Winters is a major cocaine dealer in the Garrett County, Maryland area. The CI advised that Winters uses Justin and Aaron Dillsworth to sell his cocaine. CI advised that Winters uses two stash houses for his cocaine to be delivered. The stash houses were described as being on Fingerboard Road and Kings Run Road. The CI advised that Winters' supplier will drop the cocaine inside the two houses. The CI advised that the houses are both old abandoned houses.

During June 2013, your Affiant and Det. Meyers spoke to Confidential Informant 94-232. The CI advised the following information: Vaughn Winters is major dealer of cocaine. Vaughn gets his cocaine from an unknown black male that delivers it to him. Vaughn and the black male use drop off locations. The CI advised that the drop off locations are located in the pin trees beside Vaughn's driveway to his residence, the garage across from his residence and the barns behind Vaughn's residence. The CI advised that the black male drives a Harley Davidson motorcycle and a red car. The black male drops cocaine off to Vaughn about once a week. The drops are made in the late night/early morning hours. The CI further advised that Justin Dillsworth sells cocaine for Vaughn. Justin currently lives above the garage across from Vaughn's residence. Justin is employed by Vaughn. The CI advised that Vaughn has two safes in his residence. The safes contain money and cocaine. The CI advised one of the safes is located in Vaughn's office and contains coffee cans and a tackle box that has cocaine in them. The other safe is located in a bedroom back a hallway. This safe contains money, cocaine, pills and LSD. The CI further stated that Vaughn sells to Dave and Jan (unknown last name), the woman who owns the Long Branch Saloon (Your Affiant knows this woman and her name is Becky Williams) and employees of Vaughn.

During June 2013, TFC S. Bittinger spoke to CI 94-230. The CI advised that Laura Stemple and Brad Ridder sell cocaine, molly, and marijuana. The CI advised that they get their cocaine from an older man that lives on half of a farm. The CI advised that to get to the house you go down Memorial Drive and turn right onto Eighth Street and the farm is at the top of the hill. Your Affiant is familiar with these directions and know the residence to be Vaughn Winters'. The CI further stated that Laura Stemple was obtaining 8 Balls of cocaine from the old man. Your Affiant also knows that Laura Stemple used to be in a relationship with Justin Dillsworth. Justin's mother is living with Vaughn Winters.

EXHIBIT 1

On June 17, 2013, your Affiant conducted a check through the Maryland Department of Assessments and Taxation. The following information was obtained: Vaughn Winters owns the following properties/houses:
-113 N Eighth Street, Oakland, Maryland. This is Vaughn's primary residence.
-116 N. Eighth Street, Oakland, Maryland. This is the garage/apartment that is across from Vaughn's residence where Justin Dillsworth is living.
-Dennett Road- this is a lot that is 1.118 acres.
-122 N. Eighth Street, Oakland, Maryland
-112 N. Eighth Street, Oakland, Maryland
-108 N. Eighth Street, Oakland, Maryland
-Eighth Street, Oakland, Maryland- this is an 8.5 acre lot.

On June 17, 2013 your Affiant caused a check to be made through the Maryland Motor Vehicle Administration on Vaughn Winters. The following information was obtained:
Vaughn Veryl Winters, 113 N. 8th Street, Oakland, Garrett County, Maryland, W/M, 5'9", 205lbs, DOB: 04/30/1952.

During June 2013, I spoke to CI 94-232. The CI provided the following information:
The CI advised that Vaughn has cameras on the back of his house. Vaughn installed the cameras because his residence was raided in 2003, and law enforcement made entry through the back door. Vaughn also has a little black book that he uses as a drug ledger that he keeps in his desk drawer. The CI also advised that sometimes drop offs are done at the round barn and near the pine trees beside Vaughn's residence. The CDS is placed in a cooler and left in the barn. The CI advised that one of the individuals buying from Vaughn is a guy named Buck. Buck is a former employee of Vaughn's.
The CI provided information on Dave and Jan Bardsley. The CI stated that Dave and Jan are really good friends with Vaughn and Sheila (Vaughn's girlfriend & the Dillsworth boy's mother). Dave works at the rest area along I-68 near Friendsville, Maryland. Vaughn supplies Dave and Jan cocaine. Sheila and Jan go out together around Deep Creek Lake. Sheila will also sell cocaine to the owners of the Long Branch Saloon in Mt. Lake Park, Maryland. The owners of the Long Branch Saloon will also come to Vaughn's residence to purchase cocaine.
The CI advised that the black male that brings Vaughn his cocaine goes by the name Stoney. Stoney is described as a black male, bigger guy, in his late 40's to early 50's. Stoney wears a lot of jewelry, and is from the Baltimore, Maryland area. The majority of the time Vaughn has the cocaine delivered to him, however every once in a while Stoney meets Vaughn and Sheila in Morgantown, WV.

On June 26, 2013 your Affiant spoke to CI 94-232. The CI provided the following information: CI advised that Tim Tasker and Dave Jones is working for Winters. Jones is selling for Winters.
The CI also provided the following phone numbers for Winters and other individuals that are close to him:
Vaughn Winters' cell-301-501-1567
Vaughn Winters' house- 301-334-2522

EXHIBIT 1

Sheila Dillsworth Cell- 301-501-7001
Harold Dillsworth cell - 301-501-7841
Harold Dillsworth cell- 410-441-4022


On August 21, 2013 at approximately 1940 hours, Major Mike Bittinger of the Garrett County Sheriff's Office was traveling on Eighth Street, Oakland, Maryland when he observed Mike Inglese's vehicle, a blue colored small passenger car with a Table Rock Inn sign on top, pull into the lane that runs beside Winters' residence and goes back to the barns.
Your Affiant knows that Mike and Phyllis Inglese were arrested in February 2002 by the Garrett County Narcotics Task Force on felony cocaine charges.

On October 3, 2013 your Affiant observed Winters driving a white Dodge Ram truck. Later on that day your Affiant observed that same white Dodge Ram parked at his residence.

On October 4, 2013 at approximately 1345 hours, your Affiant observed the white Dodge Ram parked at the Garrett County Courthouse. Your Affiant obtained Maryland registration 1A91815 off of the truck. Your Affiant caused a check to me made on Maryland registration 1A91815 and it comes back registered to Patriot Chrysler Dodge Jeep Inc., 2499 Maryland Highway, Oakland, MD.

On October 5, 2013 at approximately 2020 hours, your Affiant drove by Winters' residence. Your Affiant observed him in the driveway talking to an unknown individual.  They were standing beside the white Dodge Ram. At 2100 hours, your Affiant drove by Patriot Chrysler Dodge Jeep. Your Affiant observed Winters' old blue Dodge Ram parked in the back parking lot.

On October 11, 2013 at approximately 1500 hours, your Affiant observed the white Dodge Ram 2500 that your Affiant saw Winters' driving parked at the Garrett County Courthouse. Your Affiant obtained Maryland registration 9AB3524 from the Ram. Your Affiant caused a check to be made on Maryland registration 9AB3524, however the tag comes back not on file.
On October 16, 2013, your Affiant, TFC Bittinger and Det. Meyers travelled to Winters' residence in an attempt to pull trash from the residence. We walked to the trash cans that were sitting along Eighth Street across from Winters' residence. Once we got to the trash cans an alarm sounded and we had to leave the area.

On November 26, 2013 Trooper First Class Andrew Farrell, Maryland State Police, received the following information about Vaughn Winters: TFC Farrell spoke to a Concerned Citizen (herein referred to as CC6). CC6 stated that a black male delivers 4-6 ounces of cocaine every week to Vaughn Winters (random days, but weekly). CC6 said the unknown male drives a red Mazda and will drop the cocaine off in the barn (black or brown) behind the house. Vaughn then waits at least 30 minutes until he will come out and retrieve it. CC6 also said the barn and surrounding areas are filled with cameras. CC6 said you will never be able to approach it without him seeing you. CC6 said the male will come very late in the night and early morning to avoid police. CC6 advised that the male is also wanted in Maryland and he doesn't think he is from

EXHIBIT 1

here. In October/November 2013, CC6 stated he was doing work for Vaughn at his residence and CC6 was offered cocaine and observed Vaughn snorting cocaine. CC6 said Jamie Stanton frequents Vaughn's house but would not elaborate.

During December 2013, Det. Meyers spoke to an individual who wished to remain anonymous (herein referred to as CC7). CC7 advised that Vaughn Winters is still using and dealing cocaine. CC7 further stated that Vaughn is doing things now that he would have not done in the past. CC7 further stated that Vaughn is hanging with individuals who bring the police around him and Vaughn would not allow those individuals to be near him. Vaughn recently spoke to an old friend of his who stopped by his house and Vaughn immediately offered him cocaine and wanted the individual to use it. CC7 also stated that Vaughn has security cameras around the residence especially around the barns and outbuildings. No other information was obtained.

During January and February 2014, your Affiant has observed Vaughn driving the white Dodge Ram 2500 diesel truck. Your Affiant has observed this vehicle parked in his driveway as well.

On February 22, 2014 at approximately 1000 hours, your Affiant drove by Winters' residence. Your Affiant observed a red car parked in the driveway. Your Affiant obtained West Virginia registration 6UB466. Your Affiant caused a check to be made of the West Virginia tag and it comes back to Amie McCrum, 108 St. Johns Street, Parsons, West Virginia on a 2006 Chevy Cobalt.

On April 11, 2014, Det. Meyers and TFC Bittinger were on surveillance in the area of Winter's residence. At approximately 2000 hours, Det. Meyers and TFC Bittinger observed numerous vehicles in and out of the residence. This took place for approximately two hours. TFC Bittinger and Det. Meyers were unable to obtain any vehicle tag numbers due to watching another residence.

On May 1, 2014, the Garrett County Sheriff's Office received a call from Justin Dillsworth. Dillsworth claimed that he was in an argument with Vaughn Winters and Winters had struck him with a vehicle and then threatened him with a gun. Dillsworth advised that Winters never displayed a firearm but claims that Winters does have firearms in his residence, Capt. Murphy of the Garrett County Sheriff's Office went to the Winters' residence and spoke to Vaughn. Capt. Murphy found the case to be unfounded.

TFC Bittinger received information from CI-231 that Vaughn Winters is a user and dealer of cocaine. The CI advised that he/she has seen Vaughn using cocaine. The CI advised that he/she will be able to provide us more information on Vaughn.

On June 6, 2014,TFC Bittinger received a call from CI 94-231. The CI advised that Winters' pays his employees in cocaine. The CI further stated one of his employees, Curtis DeWitt gets paid in cocaine. On June 4, 2014, the Garrett County Narcotics Task Force executed a search warrant on Curt DeWitt's residence. DeWitt advised that he is working for Vaughn

Winters. The CI further stated Winters' keeps cocaine in a brief case. Inside the brief case is a zippered pouch that the cocaine is in. Winters uses cut off straws to snort cocaine with.

On June 7, 2014, Detective Meyers spoke with an individual who wished to provide information to the task force in exchange for a reduction of penalties in an upcoming court case in Garrett County. It was determined not to work with the individual, however the individual provide the following information:

Vaughn Winter is major dealer of cocaine. Vaughn owns a construction business. Vaughn pays his employees in cocaine. Vaughn gets cocaine from a black male. The black male comes to Vaughn's residence once every two weeks and brings approximately a half of kilo of cocaine, The black male comes to the house between 0100-0500 hours. The black male is only there for a short period of time. The individual advised that he/she has purchased cocaine from Vaughn. The individual advised that Vaughn drives with cocaine on him all of the time. The individual also advised that Vaughn has several firearms at his residence.

On June 12, 2014, your Affiant caused a check to be made through the National Crime and Information Center on Vaughn Veryl Winters. The following information was obtained:

On November 14, 2002, Winters was arrested by the Garrett County Sheriff's Office for CDS: Possession Marijuana, CDS: Possession of Firearms, 4 counts of CDS: Possession Not Marijuana, Reg Firearm: Illegal Possession, CDS: Possession of Paraphernalia, Dest Device Man/Pos/Dist. Winters was found guilty of CDS: Possession of Marijuana. All other charges were Nolle Prosequi.

On August 24, 1999, Winters was charged by the Garrett County Sheriff's Office for two counts of Violation of an ExParte Order. Both charges were Nolle Prosequi.
On October 10, 1990, Winters was arrested by the Garrett County Sheriff's Office for CDS: Possession. Winters was found Not Guilty.

On June 18, 1988, Winters was arrested by the Garrett County Sheriff's Office for two counts of CDS: Unlawful MFGR ETC, and CDS: Unlawful Possession. All charges were dismissed by the State.

On August 20, 1987, Winters was arrested by MSP Cumberland for two counts of CDS: Unlawful Possession. Winters was found guilty on one of the charges and Not Guilty on the other.

On August 9, 1984, Winters was arrested by MSP Cumberland for two counts of CDS: Unlawful MFGR ETC. Winters was found Guilty of one count of CDS: Unlawful MFGR ETC.

On June 11, 2014 your Affiant caused a check to be made through Maryland State Police Gun Center for Vaughn Veryl Winters. The following information was obtained: Winters is a Prohibited Felon.

Confidential Informants 94-203, 94-226, 94-231, 94-230 and 94-232 have provided information to the Garrett County Narcotics Task Force that has led to the arrest and conviction(s) of individual(s) for Maryland's Controlled Dangerous Substance Laws.

In 2003 a Search and seizure Warrant was executed at Winters' residence located at 113 N. Eighth Street, Oakland, Maryland, Since the execution of the Search Warrant in 2003, the Garrett County Narcotics Task Force has received information from Concerned Citizens and Confidential Informants that Winters is involved in the use and sales of CDS. Winters has been observed by Confidential Informants using cocaine and cocaine has been seen in his residence and vehicles.

Based on the above information and your Affiants training knowledge and experience, your Affiant believes that Winters is involved in an ongoing criminal enterprise dealing with the use and distribution of controlled dangerous substances.

Your Affiant, avers based on the information received from the aforementioned sources, your Affiant's observations, training, knowledge and expertise as a member of the Garrett County Narcotics Task Force, that there is probable cause to believe, and does believe that the laws regulating to the distribution, and or possession of controlled dangerous substances as herein before cited, are being violated in and upon the aforementioned premise.

Your Affiant, based on this investigation therefore, prays that a Search and Seizure Warrant be issued for the aforesaid premise, more particularly described aforesaid; with the necessary and proper assistance to:

(A) Enter and search the aforesaid premises, including the residence and outbuilding, located at 113 N. Eighth Street, Oakland, Garrett County, Maryland and a 1.18 acre parcel of land described as Map 0111 Parcel 02184 more particularly described aforesaid; and

(B) Search the person and clothing of any and all person(s) found in, upon, or around the said premises; and

(C) Open and search any safes, boxes, bags, compartments, or things in the nature thereof, found in, upon, or around said premises, vehicles or person; and

(D) Seize all evidence, guns, paraphernalia, Controlled Dangerous Substances, and money used in or incidental to the operation or conduct of Controlled Dangerous Substances violations, found in or upon said premises or persons; and

(E) Seize papers, documents, letters, bills, or other evidence indicating who are the residents or occupants of said premises, or who may be participating in violations of the Statutes hereinbefore cited; and

(F) Arrest all person(s) found in, upon, or around said premises, who may be participating in violations of Statutes hereinbefore cited; and

EXHIBIT 1

(G) Search and seize any papers, tickets, notes, schedules, receipts, and other items relating to domestic and international travel; and

(H) Search any books, records, receipts, bank statements and records, money drafts, letters of credit, money order and cashier checks, receipts, passports, bank checks, safe deposit keys, and other items evidencing the obtaining, secreting transfer; and

(I) Seize United States Currency, precious metals, jewelry, and financial instruments, including stocks and bonds in amounts indicative of the proceeds of illegal narcotics trafficking; and

(J) Seize photographs of co-conspirators, of assets, and/or Controlled Dangerous Substances; and

(K) Seize and examine, by persons qualified to do so, and in a laboratory setting, any and all electronic data processing and computer storage devices, including; central processing units, internal and peripheral storage devices such as fixed discs, external hard disks, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, optical readers and scanning devices, CD Rom drives and Compact Disks and related hardware, digital cameras and digital storage media, operating logs, software and operating instructions or operating manuals, computer materials, software and programs used to communicate with other terminals via telephone or other means, and any computer modems, monitors, printers, cellular telephones etc., that may have been used while engaging in violations of Maryland's controlled dangerous substance laws, herein cited, as defined in the Annotated Code of Maryland, amended and revised.

SUBSCRIBED and SWORN to, this 18th day of July, in the year of our LORD, 2014.

_____
AFFIANT
Corporal David Teets
Garrett County Sheriff's Office
Garrett County Narcotics Task Force


Before me, Judge _H. Jack Price,_ Judge of the District Court of Allegany County for the State of Maryland, this 18th day of July, 2014, personally appeared Corporal David Teets, personally known to me or properly identified, and made an oath that the contents of the foregoing documents are true and correct.

_____
JUDGE
Honorable H. Jack Price, Jr.
District Court Judge For Allegany County

<table>
<tr><td>

Maryland Department of Assessments and Taxation
Real Property Data Search (vw3.1A)
GARRETT COUNTY

</td><td>

Go Back
View Map
New Search
GroundRent
Redemption
GroundRent
Registration

</td></tr>
</table>

**Account Identifier:**      **District - 17 Account Number - 014978**

### Owner Information

| | | | |
|---|---|---|---|
| Owner Name: | WINTERS VAUGHN V | Use: | RESIDENTIAL |
| | | Principal Residence: | NO |
| Mailing Address: | 116 N 8TH ST | Deed Reference: | 1) /01187/ 00292 |
| | OAKLAND MD 21550 | | 2) |

### Location & Structure Information

Premises Address
DENNETT RD
0-0000

Legal Description
1.18 AC
S/S DENNETT RD
OAKLAND

| Map | Grid | Parcel | Sub District | Subdivision | Section | Block | Lot | Assessment Area | Plat No: |
|---|---|---|---|---|---|---|---|---|---|
| 0111 | 0016 | 2184 | | 0000 | | | | 2 | Plat Ref: |

| Special Tax Areas | | Town | OAKLAND |
|---|---|---|---|
| | | Ad Valorem | |
| | | Tax Class | |

| Primary Structure Built | Enclosed Area | Property Land Area | County Use |
|---|---|---|---|
| | | 1.1800 AC | 000000 |

| Stories | Basement | Type | Exterior |
|---|---|---|---|
| | | | |

### Value Information

| | Base Value | Value | Phase-in Assessments | |
|---|---|---|---|---|
| | | As Of 01/01/2011 | As Of 07/01/2012 | As Of 07/01/2013 |
| Land | 23,700 | 23,700 | | |
| Improvements: | 14,000 | 14,000 | | |
| Total: | 37,700 | 37,700 | 37,700 | 37,700 |
| Preferential Land: | 0 | | | 0 |

### Transfer Information

| | | | | | |
|---|---|---|---|---|---|
| Seller: | WINTERS, CLAYTON O JR & SANDRA P | Date: | 01/18/2006 | Price: | $60,000 |
| Type: | ARMS LENGTH VACANT | Deed1: | /01187/ 00292 | Deed2: | |
| Seller: | | Date: | | Price: | |
| Type: | | Deed1: | | Deed2: | |
| Seller: | | Date: | | Price: | |
| Type: | | Deed1: | | Deed2: | |

### Exemption Information

| Partial Exempt Assessments | Class | 07/01/2012 | 07/01/2013 |
|---|---|---|---|
| County | 000 | 0.00 | |
| State | 000 | 0.00 | |
| Municipal | 000 | 0.00 | 0.00 |

| Tax Exempt: | | Special Tax Recapture: |
|---|---|---|
| Exempt Class: | | NONE |

### Homestead Application Information

| Homestead Application Status: | No Application |
|---|---|

**Maryland Department of Assessments and Taxation**
**GARRETT COUNTY**
**Real Property Data Search**

Go Back
View Map
New Search

District - 17   Account Number - 014978



The information shown on this map has been compiled from deed descriptions and plats and is not a property survey. The map should not be used for legal descriptions. Users noting errors are urged to notify the Maryland Department of Planning Mapping, 301 W. Preston Street, Baltimore MD 21201.

If a plat for a property is needed, contact the local Land Records office where the property is located. Plats are also available online through the Maryland State Archives at www.plats.net.

Property maps provided courtesy of the Maryland Department of Planning ©2011.
For more information on electronic mapping applications, visit the Maryland Department of Planning web site at www.mdp.state.md.us/OurProducts/OurProducts.shtml